Kirkpatrick C. J.
This was a special scire facias, directed to the heirs and tenants of the lands which formerly belonged to one Thomas Peterson, dec., to shew cause, why the said lands should not he sold by tile present sheriff, by virtue of an execution levied upon the same, by a former sheriff, now deceased, to satisfy the plaintiff of a certain judgment therein set forth.
To this scire facias there were a number of pleas, one of which was payment, and issues taken thereupon, (a) The cause was carried down, for trial, to the Somerset circuit, in April, 1818, and verdicts rendered for the plaintiff, upon all the issues.
*837 Upon the coining in of the postea, there was a motion for a new trial, which is now the subject of
The only facts in the case which are at all material, are these.
1. In October term, 1783, the executors of one John Opdike, of whom John Buchannan, the plaintiff here, is the survivor, in the Inferior Court of Common Pleas, of the county of Somerset, recovered a judgment against the said Thomas Peterson and Thomas Peterson, jun., and Harpent Peterson, for £277 14s. 11d., with costs. This judgment was afterwards removed, by writ of error, into the Supreme Court, and there affirmed, and execution was issued thereupon returnable to September term, 1785, and was then returned levied, upon sundry goods and chattels, to small amount, and also upon 250 acres of land of the said Thomas Peterson; which is found by the jury to be the same land now in question, of which the defendants are the tenants.
2. In November, 1785, the defendants, in that suit, filed a bill in Chancery, to be relieved against that judgment and execution, and took out, as is said, an injunction, enjoining as well the sheriff who had levied the execution, as the plaintiffs, from all further proceedings thereupon. Upon this bill there were several steps taken by the parties, respectively, until the 29th of December, 1789, when the complainants, upon a rule obtained for that purpose, filed an amended bill; and after this, there is no*thing further done until September, 1815, when we find the injunction dissolved without answer.
3. In Aprils term, 1789, one Henry Garretsie obtained a judgment in the Supreme Court against the said Thomas Peterson, for £450, with costs, upon which an execution was issued, directed to the sheriff of the county of Somerset; and in April, 1791, the said sheriff, by virtue of the said execution, sold the said lands, so as aforesaid levied upon, to one Roeliff Peterson, who immediately entered upon, and became possessed, thereof; and being so possessed, about a year afterwards, sold the same to the said Henry Garretsie, who, in like manner, became possessed; and in 1801, sold the same again to the defendant, John Rowland, who, together with those holding under him, has possessed *838 the same, till this day, taking the rents, issues, and profits without render or account, to their own proper uge an(J "benefit.
4. In November term, 1816, this scire facias was sued out, and issues taken upon it, and tried as above mentioned.
5. In addition to the facts and proceedings, above stated, it was given in evidence to the jury, that at the time of the sale of the said lands, by the sheriff, there were two mortgages upon the same; one to Vanostrand and Suydam, dated May 1, 1784; and the other to'the said Roeliff Peterson, dated November 8,1787; that Roeliff Peterson, at the time of the vendue, said he would bid up the land so as to cover his own mortgage, and did actually bid it up to 35s. per acre, but upon being informed, after he had so bid, of the claim of OpdiJce’s executors, he told the sheriff he had been under a mistake and would recall his bid; but that the sheriff refused to permit him to do so, and struck it down to him accordingly; that he was, therefore, dissatisfied with the purchase, and when he had sold to Qarretsie he said, he was glad he had got clear of it, for it would have ruined him. And it was further given in evidence, that Thomas Peterson, before the year 1789, by being security for his sons, and other causes, had become considerably reduced in his circumstances, and had but little stock upon his farm, or other personal property about him. These are the facts.
This case, taken in extenso, presents several questions, well worthy of consideration. But as the defendants, themselves, have not raised these questions, either at the trial or in this argument, *but have placed themselves upon the plea of payment alone, and rested for the verification of that plea, upon the presumption of law, arising from the length of time, it would be improper to make them the subject of investigation, or the ground of decision, upon this motion. The defendants have chosen their defence, and they must stand upon its 'strength.
What then, is the ground of this presumption of payment, arising from length of time, to what cases does it apply, and how far is it conclusive ?
It is said, that by the common law, there was no stated or fixed time for the bringing of actions. The law was *839 always open: satisfaction was never presumed. In the progress of society, however, it was soon found necessary to supply this deficiency by statute, and to compel men to prosecute their rights within a reasonable time, or to abandon them for ever. Hence, we find, from the reign of Henry L, a succession of statutes, narrowing the latitude of the common law in this respect, and limiting the time, in which actions might be brought, to shorter and shorter periods, until they had brought it down, in most cases, to twenty years only, and in many, to a still shorter time.
The reasons upon which these statutes are founded, sir William Blackstone tells us, are; first, because the law will not disturb an actual possession in favour of a claim which has been suffered to lie dormant for a long and unreasonable time: nam vigilantibus et non dormientibus subserviunt leges; secondly, because it presumes that he who has, for a long time, had the undisturbed possession of either goods or lands, however wrongfully obtained at first, has either procured a lawful title or made satisfaction to the injured, otherwise he would have been sooner sued ; and thirdly, because it judges that such limitations tend to the prevention of innumerable perjuries, the preservation of the public tranquillity, and, what it values perhaps more than all, the suppression of contention and strife among men, namprsecipue interest repúblicas ut finis sit litium.
Taking these great fundamental principles, then, thus recognized by successive statutes, as the basis of their conduct, the courts of justice built up, upon them, a system, extending beyond the letter of the statutes themselves. They were professedly founded, in part, sir William Blackstone says, upon the presumption that lawful titles may have been acquired under possessions tortiously taken, and that satisfactions may have been made upon contracts, in their origin indisputably valid, but that the evidence thereof, after lying so long, may be destroyed by the all-devouringffooth of time. The judges only extended this principle to cases which, though not within the letter, were yet within the reason and spirit of .the law.
Lord Hale, I think, is said to be the first who adventured upon this course ; he was followed by Holt, and then *840 came lord Mansfield with still a bolder step; the judges in Chancery, in the mean time, keeping equal pace, if not even going beyond the courts of law.
In the case of The King v. Stevens, one of the corpora-tors of St. Ives, (Bur. 433) lord Mansfield said there was no direct and express limitation when a bond should be supposed to be satisfied ; the general rule wras, indeed, about twenty years, but it had been left to a jury upon eighteen. So though there was no statute nor fixed rule of limitation, as to the length of time which should quiet the possessors of these offices, yet they ought not to be disturbed after a great length of time.
In the Winchelsea cases, (Bur. 1962) the court said they had unanimously resolved, that after twenty years undisturbed possession of a corporate franchise, they would grant no rule upon a corporator to shew by what right he held. This resolution was founded, not on any express provision of the law, but in analogy to the rules established in other cases. By the statutes of limitation, they said, writs of formedon and entry into lands, were confined to twenty years; writs of error were confined to twenty years; courts of equity did not allow the redemption of mortgages, after twenty years; bills of review had been generally disallowed after twrenty years; bonds which had lain dormant should be presumed to be paid after twenty years; ejectments required proof of possession, within twenty years; and so, leaning upon these cases, they extended the doctrine, by analogy, without positive statute, to the case of a corporate franchise, then depending before them.
The same ground has been taken, and the same course pursued by succeeding judges, down till this day; so that nothing can be better settled than that they do extend the principles of these statutes, by analogy only, to cases within the reason and spirit, though not within the letter, of them. And, upon this ana*logy, this presumption of payment, as appears by lord Mansfield’s reasoning, is wholly founded.
We have carried the limitation of actions, still farther than they have done in England. We have carried it so far that I do not now recollect a single case, unless, in *841 deed, it be the one before us, in which an action can be maintained after twenty years. After that time, latent titles to land, unaccompanied by possession, are supposed to bo extinct, mortgages to be redeemed, judgments to be satisfied, bonds to be paid. Our act for the limitation of actions, extends expressly to all these. Now, if in England, the writs of formedon, and entry into lands, and of writs of error, and actions of ejectment, created by statute, would be extended, by analogy, to corporate franchises, and be made the ground of presumptive payment of bonds and mortgages, certainly it cannot be going too far to say, that when our act of assembly has declared that no scire facias shall issue, or action of debt be maintained, upon a judgment, unless within twenty years from its date, and that too, upon the presumption that it is already paid, I say it will certainly not be going too far, to extend this presumption, by analogy, to the case of an execution upon such judgment, which has, indeed, been levied, but has lain dormant, now, for thirty years and more.
But, suppose these points to be gained, that the principle of the statute is to be extended by analogy, and that the presumption of payment built upon it, is applicable to the case before us, in the same extent, and upon the same reason, as to a bond; still it is to be inquired how far that presumption is conclusive, and whether the verdict of a jury can be set aside, and a new trial granted, because they have found against it.
It is said by the plaintiff, that the presumption, at most, is but evidence upon the plea of payment; that it may be strengthened or invalidated by concomitant circumstances, and that the jury, therefore, are to judge of its strength or weakness, and to pass upon it like other evidence. And though this may be a just view of it in a certain sense, yet, upon a careful examination, perhaps we shall find it rather specious than solid, so far as it respects the present case.
It is true, that this presumption may be either strengthened or invalidated; nay, indeed, it may be wholly overcome, by circumstances; and when such circumstances are mere matters in *pcds to be proved by witnesses, the jury must judge both of the truth of their *842 existence, and of their operation and effect upon the But still, when the. length of time is wholly unaccounted for, and the presumption, therefore, stands in its full force, it is conclusive ; and the conclusion to be drawn from it is a conclusion of law, to be declared by the court, always and universally the same; and though the jury must pass upon the issue of solvit vel non, yet the law thus to be declared to them, is the evidence by which they are to be governed ; they are not by vain conjecture or imaginary reasonings, to break down the rules of property, established by law, and declared by the court.
In the case of Humphreys v. Humphreys, (3 P. Williams 395) lord chancellor Talbot says, that after twenty years, and no interest paid during that time, a bond shall be presumed to be satisfied, unless something appears. to answer for that length of time. And after a verdict at law, he granted an injunction to stay proceedings thereupon. So, (same book 286) on a demurrer to a bill to redeem a mortgage, where it appeared by the bill, that the mortgagee had been in possession more than twenty years, the court held that the defendant need not even plead the length of time, but might demur; and that no redemption could be allowed; for that as twenty years would bar an entry or ejectment, so it should bar the right of redemption also; making the presumption not only a bar, but a legal bar, conclusive upon a demurrer.
In the case of Searle v. Barrington, (Str. 813) the defendant had pleaded payment, and rested upon the legal presumption arising from length of time, the bond being of more than twenty years standing. The plaintiff offered as evidence, to encounter this presumption, an endorsement upon the bond of interest paid within the twenty years, but this was overruled by the court, and a nonsuit ordered. In the re-consideration of this case at bar, the court, indeed, held that the endorsement on the bond, of interest paid, was lawful evidence, and ought to have been submitted to the jury, to determine whether it was made fairly and bona fide, or merely to evade the presumption; but there was no pretence that the presumption arising from length of time was not in itself a *843 good bar, or that standing alone it was not a good ground of nonsuit, or that it ought to have been left to the to determine its effect.
So, in an anonymous case, (6 Mod. 22) Holt, C. J. says, if a *bond be of twenty years standing, and no demand proved thereon, or good cause shewn for so long forbearance, upon solvit ad diem, I will intend it paid.
From those cases, without going into a multitude of others, I think the conclusion irresistible, not only that twenty years affords a presumption of payment, but that that presumption,, standing alone, is conclusive in the law, and is so to be declared by the court; and not to be left to the jury to determine its effect. It is true that Butter, in a later case in the King’s Bench, seems to growl at this doctrine a little, and to express himself, as if he thought the jury the sole judges of the effect. Whether he was led into this, from having given a hasty opinion at the Nisi Prius, or from what other cause soever, if he meant to maintain that doctrine, he was in an error. It is contrary to the whole course of decision upon that subject, as well as to the very nature of the thing itself; for whatever the law presumes, it belongs to the court to declare, and not to the jury.
I have spoken of the nature and effect of this presumption when standing alone. Is there then, any thing in this case to overcome, or at all to invalidate it ?
The plaintiff attempted to shew at the trial, and he has insisted here also, that Roeliff Peterson, the purchaser, at the time of the purchase, had notice of this judgment and execution, under which he claims. The evidence however, is really the other way. He had made his bid without such notice, and afterwards being informed of them, by some by-stander, not by the plaintiff, he wished to recall it, but was not permitted. His object was to secure his mortgage, he thought he was doing so, but was informed he was mistaken. I do not lay stress upon this want of notice however, for the judgment and execution, being matters of record in a court of common law, every purchaser was to take notice of them at his peril. But the same thing cannot be said of the proceedings in the Court of Chancery; that is not a court of record; none *844 take notice of the proceeding there while in fieri ; none bound by them but those who are parties or privies. Tliis purchaser then, had constructive, not actual, notice of a judgment entered, and execution issued six years before; the defendant, Thomas Peterson, had departed this life; the plaintiff, as the executor of Opdike, had administered his estate; had settled his account; the judgment had lain dormant; the execution *had not been executed ; the defendant and his family had continued in possession of the land; and even now, when publicly advertised for sale, no executor appears to give notice, to make claim, to declare his right, to set up a pretence that the judgment is not satisfied. Nothing is known of the bill in Chancery, or the injunction; or if heard of at all,'they had, like the judgment and execution, been suffered to sleep for six years. Is there any thing in all this, to encounter the presumption? Would we not, as rational men, without the aid of such presumption, say the debt must have been paid ?
Again. It is proved that Thomas Peterson had become security for his sons; had met with losses ; had become poor; had but little personal property about him; and it is intended to deduce from this, that he was unable to pay the judgment; and that the presumption of law cannot prevail against this evident inability. But it should be considered, in the mean time, that the plaintiff had the land in execution; that by answering the bill in . Chancery, if the right was with him, he could have dissolved the. injunction at any day, and caused that land to be sold; nay, more, it should be considered that by a standing rule of that court, no such injunction could be granted, after verdict and judgment, without a deposit of the amount thereof, with costs ; so that he had the means of satisfaction completely in his own power. Can it be said, then, that his lying still for six years in this situation, nay, worse than lying still, for he was attached for contempt for not answering, invalidates the presumption; or rather, is it not satisfactory proof, either that the suit was wholly abandoned, upon facts disclosed in the bill, as indeed well it might, or that the small balance to which *845 the debt was incontestiblv reduced by those facts, was satisfied and paid. -
But further. Let us suppose there had been no such laches on the part of the plaintiff, up till the time of the sale, that he had prosecuted with due diligence, that he had come forward at the vendue and made known his demand, and that the purchaser had had perfect knowledge of all this, yet still to what would it amount upon the question w'hich we are discussing.
If a man make a deed in fee of his lands upon a full consideration, it is a matter perfectly within his knowledge, and imposes upon him, the strongest obligation to deliver up the possession tp the purchaser; so if he make a mortgage, to secure money *borrowed, or a bond to perform a duty, he knows well the obligation of these instruments, and how they are to be discharged; but yet, if they shall be suffered to lie twenty years, the action is gone, his knowledge is no answer, the presumption is conclusive. And if conclusive in a case like this, how much more so, where the party has stood by and seen the land passing from hand to hand, for full value, and the labour and strength of the purchaser spent upon it, without notice, without claim, without pretence of right, for twenty years and more.
Will the plaintiff still go back to the injunction, and offer that as an excuse for all this delay ?
The injunction, properly considered, instead of invalidating, strengthens the presumption of law against him. He had recovered a judgment upon his bond. The defendant filed a bill in equity, praying to be relieved against this judgment, upon the allegations of certain facts, which, if true, were, in the opinion of the chancellor, sufficient to entitle him to relief; he called upon him to answer these facts, and, in the mean time, enjoined him from proceeding at law at his peril; thus denying the equity of his claim, refusing the payment of it, and setting him at defiance. The plaintiff, neither answers the facts, nor dissolvesthe injunction, nor proceeds upon his execution, nor even makes claim under it, but submits in silence for thirty years. Now, what is the conclusion ? Is it not irresistible, either that he abandoned the suit, or *846 received satisfaction upon just and equitable terms ? And whichsoever of these ways it may have been quieted, it js equally within the presumption of law, for that is a presumption of satisfaction, rather than a direct payment in money. And it is a presumption too, founded not upon the punctuality, and justice, and ability of the debtor, but upon the acquiescence of the creditor; for who, having the means of payment completely in his power, would let a debt lie, without either principal or interest, for twenty or thirty years ? And especially, what executor, acting as a trustee for others, could possibly do so ?
Upon the whole then, I am of opinion, that the cause was left to the jury upon too broad ground; that in looking for positive proof of direct payment, in money, they have overlooked that, which the law considers as equivalent to such positive proof; and, that therefore, they have found a verdict for the plaintiff, *when by law, it ought to have been for the defendants: and therefore, let the verdict be set aside.
Rossell J.
after stating the facts minutely, added. On this state of facts the defendants apply for a new trial, for the following reasons:
1. The verdict was contrary to evidence.
2. It was contrary to law.
3. The jury did not assess the damages.
It is urged, by the counsel for the plaintiff below, that this case is without the statute, as an execution had been issued and levied, on the goods and lands of the defendant, value one dollar ; that this was a lien on the lands, against which time does not operate. A judgment is a . lien, and there is no magic in the term, execution unexecuted ; it creates no new or additional lien on lands; it gives power to the sheriff to seize on, and dispose of, the goods and lands of the defendant; but if this seizure is not made for above a year the execution becomes, I presume, a dead letter in the hands of the officer; and it is necessary to sue out a new execution, bottomed on the original judgment, which only can give life and virtue to an execution. Destroy the judgment, and the execution falls of course. By our statute (Pat. 353) no scire facias is *847 allowed to issue to revive a judgment, after twenty years, except under the usual provisos of infancy, &e.
The principle of time, operating as a bar to actions, under the statute of limitations, is not contradicted. For although the jury may, from the evidence, be clearly of opinion that the demand of the plaintiff has never been satisfied, they are bound to consider the time limited by the statute, as a barrier which they are not permitted to pass. Not so in cases not embraced by the statute. There, however, courts reasoning from analogy, to quiet lawsuits and to secure possessions, long acquiesced in, have directed juries that they may presume payment in cases of bonds, &c.; or the right of defendants to real estate, after the lapse of many years, during which the plaintiff has slept over his rights, and suffered the defendant to exclusively enjoy all the benefits arising from the premises. After a lapse of eighteen or twenty years, bonds will be presumed to be paid ; after twenty years, no judicial proceeding, whatever, ought to be set aside for irregularity. 7 John. 556. In 4 Bur. 1962-3, the court reasoned from ^analogy, and were, on full consideration, unanimously of opinion that twenty years was the ne plus ultra, beyond which they would not disturb the peaceable possession of a franchise ; yet a franchise is a branch of the royal prerogative. In neither of those cases was there any statute of limitations, operating as a bar. If, in any case, the court would be justified in limiting the time beyond which actions should not be brought, it would be in one like the present.
The bill of the defendant was filed in Chancery, and an injunction issued in 1789. We are bound to believe, that this bill contained matter sufficient to justify the issuing the injunction. Even the plaintiff seems to have been well aware of this, as he put in no answer, nor took a single step to get this injunction dissolved, until 1813, a lapse of twenty-three years, when the original defendant had been long dead, and the lands passed through the hands of several bona fide purchasers, and that too with the alleged knowledge of the executor of the obligee, living near the premises, yet the whole proceeding continued to sleep in peace. The court, under such cir *848 cumstanees, ought to have instructed the jury, that they the power to presume a satisfaction of the original judgment against the Petersons; for want of this, they might reasonably suppose, that without absolute proof of payment to the plaintiff or his representative, they were bound to find for him.
The sheriff, by his levy, obtained a special property in the goods of the defendant, which could not be divested, but by the total destruction of the judgment on which his execution was founded. The injunction only forbid the sale, until the rights of the parties should be finally determined. The sheriff was liable for the amount of the goods levied on, for which he must account with the plaintiff, at least for the value he himself put on them, yet the jury paid no attention to this legal provision of the statute.
On the whole of this case, I am of opinion, that a new trial should be awarded.
Verdict set aside.

.) See Earle vs. Earle, 1 Har. 273.